JUSTIN A. BRACKETT (HI Bar No. 9954)
515 Ward Avenue
Honolulu, HI 96814
Telephone: (808) 377-6778
Email: justinbrackettlaw@gmail.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANNETTE AGUSTIN, | CASE NO. 1:17-cv-525 |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES DECLARATORY AND INJUNCTIVE RELIEF, EXHIBITS 1 THROUGH 9, and VERIFICATION |
| THE PNC FINANCIAL SERVICES GROUP, INC., PNC BANK N.A., and PNC MORTGAGE, | |
| Defendants. | JURY TRIAL REQUESTED |

## COMPLAINT

## <u>INTRODUCTION</u>

1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 pursuant to 15 U.S.C. § 1692k(d) as well as 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), in their illegal efforts to collect a consumer debt.

[ 1 ]

3.      This action also arises out of Defendants' violations of the Telephone Consumer Protection Act (hereinafter "TCPA"), 47 U.S.C. §§ 227 *et seq.* in their illegal calls to Mrs. Agustin's cellular telephone without her express permission.

4.      This is also an action for damages against the Defendants for breach of contract.

5.      This is also an action for damages against the Defendants for unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Sections 443B-18, 19, and 20 of the Hawaii Revised Statutes.

6.      Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

**PARTIES**

7.      Plaintiff, Annette Agustin (hereinafter referred to as "Plaintiff" and/or "Mrs. Agustin ") is a resident of this State, District and Division who is authorized by law to bring this action.

8.      Defendant The PNC Financial Services Group, Inc. (hereinafter "Defendant PNC FSG") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Pennsylvania that maintains William S. Demchak, One PNC Plaza, Tax Dept. F249, 5th Avenue, Pittsburgh, PA 15222-2707 as its corporate representative, and is the parent corporation of PNC Bank, N.A.

[ 2 ]

9. PNC Bank N.A. (hereinafter "Defendant PNC Bank") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Pennsylvania that maintains The Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, OH 43215 as its registered agent for service of process, and a subsidiary of Defendant PNC FSG.

10. Defendant PNC Mortgage (hereinafter "Defendant PNC Mortgage") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Pennsylvania that maintains PNC Bank, N.A., 249 Fifth Ave, Pittsburgh, PA 15222-2707 as its registered agent for service of process, and is a subsidiary of Defendant PNC FSG.

11. Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTUAL ALLEGATIONS

12. Defendants have alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and this debt is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

13.     More specifically, this debt is a home mortgage alleged to be a debt originally owed to or serviced by National City Mortgage, a division of National City Bank (hereinafter "National City Mortgage") and currently owned by HSBC Bank USA, National Association As Trustee For Luminent Mortgage Trust 2007-2, a trust organized to hold mortgages.

14.     The debt originally owed to or serviced by National City Mortgage was a home loan or mortgage (hereinafter "mortgage") of 15-1493 23rd Avenue, Keaau, HI 96749 (hereinafter "property") in the principal amount of $278,400.

15.     The debt originally owed to or serviced by National City Mortgage was executed on February 9, 2007.

16.     Effective November 6, 2009, National City Mortgage merged with and into Defendant PNC FSG.

17.     The mortgage was subsequently assigned from Defendant PNC FSG to HSBC Bank USA, National Association As Trustee For Luminent Mortgage Trust 2007-2, pursuant to an Assignment of Mortgage recorded on May 18, 2012.

18.     The mortgage was assigned to HSBC Bank USA when it was in default.

19.     Defendants use mail in their businesses.

20.     Defendants use telephone communications in their businesses.

[ 4 ]

21.     The primary purpose of Defendants' businesses is to service mortgages and collect debts.

22.     Defendants regularly collect, or attempt to collect, debts owed, or due, or asserted to be owed or due to another.

23.     Defendants are debt collectors subject to the provisions of the Fair Debt Collection Practices Act and H.R.S. section 443B.

24.     Defendants have been sending collection letters to Mrs. Agustin.

25.     Defendants have been making telephone calls to Mrs. Agustin.

### *District Court Settlement on January 11, 2011*

26.     Plaintiff filed a lawsuit against Defendant PNC Mortgage before this court:  case number 09-cv-00423 SOM-KSC.

27.     On January 11, 2011, Plaintiff, Defendant PNC Bank, and First American Title went before this court for settlement of case number 09-cv-00423 SOM-KSC. *See Exhibit 1.*

28.     On January 11, 2011, Defendant PNC Bank agreed to "pay $5,000 cash for keys" and Plaintiff agreed to vacate and turn over possession of the property. *Id.*

29.     Plaintiff agreed to vacate the property by May 11th, 2011, not oppose a non-judicial foreclosure by Defendant PNC Bank, and continue to maintain the

property until surrendering possession, which Plaintiff did. *Id.*

30.     The settlement included language that no deficiency would be sought by Defendant PNC Bank and both parties would be released of all claims. *Id.*

31.     The U.S. District Court for the District of Hawaii retained jurisdiction to enforce the terms and conditions of the settlement. *Id.*

32.     A confidential settlement agreement bearing these terms was signed by all parties.

### *Stipulation for Dismissal with Prejudice at the District Court*

33.     On May 18th, 2011, Plaintiff and Defendant PNC FSG signed an agreement for the dismissal of all claims with prejudice as agreed upon at the settlement hearing. *See Exhibit 2.*

34.     The parties submitted a Stipulation for Dismissal with Prejudice on July 15, 2011 and was filed on July 18, 2011 at the District Court. *Id.*

### *Collection Letters from Defendant PNC Bank*

### *August 24, 2011 Collection Letter*

35.     On August 24, 2011, Defendant PNC Bank sent a letter to Mrs. Agustin informing her that PNC Mortgage "is the servicer and owner, or authorized representative of the owner of the mortgage on the referenced loan." *See Exhibit 3.*

[ 6 ]

36.    The August 24, 2011 letter is an attempt to collect the account ending 6683 as it specifically asserts: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.*

37.    The August 24, 2011 letter stated: "It is our duty to notify you that you have breached or defaulted in the performance of your obligation under the Note and Mortgage evidencing and securing your loan." *Id.*

38.    The August 24, 2011 letter claims that monthly installments have not been made including the payment for April 1st, 2009. *Id.*

39.    The August 24, 2011 letter asserts that "to cure the breach or default mentioned above on or before September 23, 2011 is as follows: Payment in certified funds of $51,524.95 which includes the 9/1/2011 installment and applicable late charges, property inspection and non-sufficient funds fees." *Id.*

40.    The August 24, 2011 letter asserts that failure to cure the breach or default by September 23, 2011, "will result in the acceleration of the maturity date of the Note, in the declaration that all sums secured by the Deed of Trust are immediately due and payable, and in this matter is being referred to our attorney for whatever action is deemed appropriate and necessary. *Id.*

41.    The August 24, 2011 letter also states: "Should a foreclosure commence, with a resultant sale of the property, you may be liable for any

deficiency balance, as provided by law." *Id.*

42.     Based on the settlement entered before this Court on January 11, 2011 Defendants were not to seek any deficiency or any amount from Mrs. Agustin as both sides fully released each other. *See Exhibit 1*.

43.     Since Mrs. Agustin did not owe any money to Defendant PNC Bank, it had no right to continue demanding payments from her or to threaten her with additional legal proceedings and a deficiency balance.

### *Defendant PNC Bank Collection Letters in 2014*

44.     Defendant PNC Bank continued its collection efforts, sending a massive amount of collection demands after the settlement and release of the account.

45.     Defendant PNC Bank's letters were all an attempt to collect a debt by a debt collector.

46.     Defendant PNC Bank sent Mrs. Agustin collection letters in 2014 in the form of Mortgage Statements and Delinquency Notices with the last four digits of the account number listed as 6683. *See Exhibit 4*.

47.     The collection letters in 2014 each demanded a "Regular Monthly Payment" of $961.81 from Mrs. Agustin. *See Exhibit 4*.

48.     Defendant PNC Bank continued to seek large amounts of interest and

fees from Ms. Augustin, alleging the following amounts to be owed:

| Statement Date | Total Amount Due | Total Interest and Fees (Includes Escrow) Added |
|---|---|---|
| 08/18/2014 | $91,152.90 | $3,564.01 |
| 08/21/2014 | $97,747.99 | $10,159.10 |
| 09/16/2014 | $92,126.71 | $3,576.01 |
| 09/22/2014 | $99,120.66 | $10,569.90 |

*Exhibit 4.*

49.    The amounts demanded are entirely inconsistent: The alleged amount demanded on August 21, 2014 greatly decreased in the September 16, 2014 letter, and then drastically increased in September 22, 2014.

50.    Defendant PNC Bank's August 21, 2014 and September 22, 2014 Delinquency Notices assert that "Failure to bring your loan current may result in fees and foreclosure – the loss of your home." *See Exhibit 4.*

51.    Defendant PNC Bank's August 21, 2014 and September 22, 2014 Delinquency Notices also assert that Mrs. Agustin's loan has been delinquent as of April 1st, 2009. *See Exhibit 4.*

52.    The August 26, 2014, September 8, 2014, September 23, 2014, and November 24, 2014 collection letters identify account 6683 and assert that "This is

an attempt to collect a debt and/or enforce our lien." *See Exhibit 4.*

53.     The August 26, 2014, September 8, 2014, September 23, 2014, and

November 24, 2014 collection letters acknowledge that Defendant PNC Bank had

recently contacted Mrs. Agustin about her mortgage. *See Exhibit 4.*

54.     The letters make no mention of the 2011 settlement as a basis for not

holding Mrs. Agustin personally liable.

### Defendant PNC Bank's Response to Plaintiff's Dispute Letters

55.     Mrs. Agustin sent many dispute letters to PNC Bank.  PNC Bank's

responses to her disputes are outlined below.

### *PNC Bank's November 10, 2014 Letter*

56.     Defendant PNC Bank sent Mrs. Agustin a letter dated November 10,

2014 regarding her account number ending in 6683. *See Exhibit 5.*

57.     In Defendant PNC Bank's letter dated November 10, 2014, it states

that PNC Mortgage received Mrs. Agustin's October 5, 2014 correspondence

disputing the debt of account number ending in 6683. *Id.*

58.     In Defendant PNC Bank's letter dated November 10, 2014, it

explicitly asserts: "Our records indicate that **you entered into a Settlement**

**Agreement with PNC**. We have updated the account to reflect that **you no longer**

**have personal liability for either the debt or for the property.**" *Id.* (emphasis

added).

59.     This demonstrates that as of November 2014 Mrs. Agustin was arguing with Defendants about their illegal collection attempts and they acknowledged that she was not personally liable to them any more.

60.     In Defendants' letter dated November 10, 2014, they also state that on November 6, 2014 Mrs. Agustin's credit reports were updated to show the account was settled as of May 2011. *Id.*

61.     Defendants state they are "working diligently to update our system to prevent any further communication be sent to you. However, you may continue to receive information about the foreclosure." *Id.*

62.     Therefore, as of November 10, 2014 Defendants again agreed to stop all future calls and letters with the exception of only information about the foreclosure.  As explained below, the calls and demands for payment continued relentlessly.

### *PNC Bank's December 10, 2014 Letter*

63.     Mrs. Agustin again disputed owing the debt and PNC Bank sent Mrs. Agustin another response letter dated December 10, 2104 (should be 2014) regarding her account number ending in 6683. *See Exhibit 5.*

64.     Defendant PNC Bank's December 10, 2014 letter was written by

Melody Howell, Consultant 1 of Enterprise Escalation Group in support of
Defendants. *Id.*

65.     Defendants' December 10, 2014 letter recognizes that Mrs. Agustin
disputed her alleged debt for account number ending 6683 through the Consumer
Financial Protection Bureau (hereinafter "CFPB") on November 19, 2014. *Id.*

66.     In Defendants' December 10, 2014 letter they explain that Defendant
PNC Bank's records indicate that the issue has been addressed prior to the Mrs.
Agustin's inquiry with CFPB. *Id.*

67.     Again Defendants' December 10, 2014 letter explains that their
November 10, 2014 letter acknowledges that Mrs. Agustin "entered into a
Settlement Agreement with PNC" and she and her family "no longer have
personal liability for either the debt or the property." *Id.*

### *Defendant PNC Bank's 2016 Collection Letters*

68.     Defendants continued to send collection demands to Mrs. Agustin in
2016. *See Exhibit 6.*

69.     Defendants sent Mrs. Agustin collection letters in 2016 in the form of
Mortgage Statements with the last four digits of the account number listed as 6683.
*Id.*

70.     The collection letters in 2016 demand an increased monthly payment

of $1,077.80. *Id.*

71.     Defendants added great amounts of interest and fees alleging the following amounts to be owed by Mrs. Agustin:

| Statement Date | Total Amount Due | Total Interest and Fees (Includes Escrow) Added |
|---|---|---|
| 08/16/2016 | $115,424.28 | $3,998.00 |
| 10/17/2016 | $117,667.86 | $4,056.99 |
| 11/16/2016 | $118,789.65 | $4,071.99 |
| 12/16/2016 | $119,911.44 | $4,086.99 |

*See Exhibit 6.*

72.     The Mortgage Statements dated October 17, 2016, November 16, 2016, and December 16, 2016 includes a Property Inspection Fee of $15.00.

### *Defendant PNC Bank Collection Letters in 2017*

73.     Defendant PNC Bank's letters dated in 2017 are attempts to collect a debt from Mrs. Agustin. *See Exhibit 7.*

74.     Defendant PNC Bank's letter dated January 16, 2017.

75.     Defendant PNC Bank's letter dated January 16, 2017 identifies the account number ending in 6683, declares 4.125% as the new mortgage interest rate beginning March 1, 2017, and demands a new total monthly payment of $1,942.10

(previously $1,106.79) due on April 1, 2017. *See Exhibit 7.*

76.    Defendant PNC Bank demanded large payments from Mrs. Agustin as

follows:

| Statement Date | Total Amount Due | Total Interest and Fees (Includes Escrow) Added |
|---|---|---|
| 01/17/2017 | $121,033.23 | $4,101.99 |
| 02/16/2017 | $122,170.02 | $4,134.99 |
| 02/27/2017 | $121,063.23 | $3,025.20 |
| 03/16/2017 | $124,127.12 | $4,982.23 |
| 04/17/2017 | $126,084.22 | $4,997.3 |
| 04/24/2017 | $124,142.12 | $3,055.20 |
| 05/16/2017 | $128,041.32 | $5,012.30 |
| 05/22/2017 | $126,099.22 | $3,070.20 |
| 08/14/2017 | $131,970.52 | $3,115.20 |
| 08/16/2017 | $133,912.62 | $5,057.30 |

*See Exhibit 7.*

77.    Defendants' demands are inconsistent: the total amount due decreased

from the February 16, 2017 letter to the February 27, 2017 letter, then increased as

of March 16, 2017; decreased again from the April 17, 2017 letter to the April 24,

2017 letter; and decreased again from the May 16, 2017 letter to the May 22, 2017

letter despite no payments being made. *Please table above, Exhibit 7.*

78.    Defendants' demands are so outrageous that they added Property

Inspection Fees on February 6, 2017 and again just one day later, on February 7,

2017. *Id.*

79.    Defendants' 2017 demand letters again threaten that "Failure to bring

your loan current may result in fees and foreclosure – the loss of your home." *See

Exhibit 7.*

80.    Defendants' 2017 demands further seek "Corporate Advance" fees

that are "not reflecting in the amounts owed" as follows: $14,385.78 on February

27, 2017, $15,695.91 on May 22, 2017, and $16,716.59 on August 14, 2017.

81.    The January 23, 2017 and April 20, 2017 collection letters assert:

"This is an attempt to collect a debt and/or enforce our lien." *Id.*

82.    The January 23, 2017 and April 20, 2017 collection letters

acknowledge that Defendant PNC Bank recently contacted Mrs. Agustin about her

mortgage. *Id.*

83.    The January 23, 2017 and April 20, 2017 collection letters also state

that "If this debt has been discharged or if you are protected by the automatic stay

in bankruptcy, we are not attempting to collect the debt from you personally, and if

we have obtained relief from the automatic stay, we will only exercise our rights against the property itself." *See Exhibit 7.*

84.     The January 23, 2017 and April 20, 2017 collection letters make no mention of the settlement agreement and release of the debt.

### *Mrs. Agustin's Dispute Letters to Defendant PNC Bank*

85.     Mrs. Agustin mailed a letter dated July 5, 2017 to Defendants disputing the alleged debt of account number ending in 6683. *See Exhibit 8.*

86.     In Mrs. Agustin's dispute letter dated July 5, 2017, she strongly asserts that she does not owe the alleged debt of $128,056.32 for the account number ending in 6683. *Id.*

87.     Mrs. Agustin has suffered actual damages of postage, copy costs, mileage costs to send the dispute letter.

88.     Mrs. Agustin has suffered actual damages of postage, copy costs, mileage costs to attend appointments with her attorney, and emotional distress due to Defendant's actions.

### *Plaintiff's Credit Report*

89.     On August 29, 2014, Mrs. Agustin obtained her credit report from American Reporting Company, LLC (hereinafter "American Reporting"). *See Exhibit 9.*

[ 16 ]

90.    The August 29, 2014 credit report declares that Plaintiff's credit information was provided to American Reporting by Transunion, Equifax, and Experian, who are also credit reporting agencies as defined in 15 U.S.C. §1681a(f). *Id.*

91.    Despite the settlement agreement terms being to the contrary, Mrs. Agustin's August 29, 2014 credit report showed that Defendant was communicating information to Transunion, Equifax, and Experian that Plaintiff still owed the alleged debts. *Id.*

92.    The reporting of the alleged debt to the credit bureaus is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

93.    By communicating to American Reporting that Plaintiff owes a different and greater amount than what Mrs. Agustin actually owed, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(8), and 1692e(10)

94.    The August 29, 2014 credit report shows that Defendant PNC Bank demanded a balance of $278,355 on the account ending in 6683 as of August 2014. *Id.*

## *Collection Calls*

95.    Mrs. Agustin asserts that Defendants made calls to her cellular

telephone attempting to collect this debt in the past four years.

96.     Mrs. Agustin asserts that Defendants made calls to her cellular telephone before 8:00 A.M.

97.     Upon information and belief, Mrs. Agustin did not provide her cellular telephone number to National City Mortgage or PNC Mortgage, therefore Defendants did not have express written permission to contact Mrs. Agustin at her cellular phone number.

## CAUSES OF ACTION

### COUNT ONE:
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### FIRST VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT:
### FALSE OR MISLEADING REPRESENTATIONS

98.     The acts of Defendant constitute violations of the FDCPA.  Violations by Defendant of the FDCPA include, but are not limited to, the following: false and misleading representations in communications as to the character, amount, or legal status of the alleged debt of 15 U.S.C. §1692e(2).

99.     Mrs. Agustin and Defendant PNC Bank entered into a Settlement Agreement before the U.S. District Court for the District of Hawaii on January 11, 2011, wherein Defendant PNC Bank agreed not to not seek a deficiency and both sides agreed to release all claims. *Exhibit 1.*

100.   A settlement agreement was entered and in keeping with the settlement agreement a Stipulation for Dismissal with Prejudice was filed on July 18, 2011, which should have put an end to Mrs. Agustin's alleged debt. *See Exhibit 2.*

101.   Even after agreeing to a full release of all claims, Defendants continued collecting from Mrs. Agustin, sending countless collection letters from August 2011 until now, each of which constitute a false or misleading representation.

102.   Defendant PNC Bank continued to send Mrs. Agustin collection letters month after month, year after year.  Even today, over six years after she was released from any liability on the account, Defendants continue to demand payment from her. This constitutes a pattern or practice of false and misleading representations to Mrs. Agustin, demanding payment of a debt she no longer owes.

## SECOND VIOLATION OF
## THE FAIR DEBT COLLECTION PRACTICES ACT:
## <u>FALSE OR MISLEADING REPRESENTATIONS</u>

103.   Defendants' violations of the FDCPA also include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

104.   The letters from Defendants are false, deceptive, and misleading.

105.   Despite the fact that both sides agreed to release all liability as to the other, PNC Bank continued demanding payments from Mrs. Agustin. *See Exhibit 2.*

106.   Defendants' letters are false in demanding payments on a settled and released account.

107.   Defendants misled Mrs. Agustin by claiming to stop collection of the account one day and then continuing to collect the debt by sending six more years of collection demands.

108.   Defendants tried to deceive Mrs. Agustin as to 1) whether she still owed the debt, 2) their rights as to collecting a debt that had already been settled, and 3) what actions they could take to collect this debt.

### THIRD VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT:
### <u>FALSE OR MISLEADING REPRESENTATIONS</u>

109.   Defendants' violations of the FDCPA also include, but are not limited to, the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

110.   On January 11, 2011 Defendant PNC Bank asserted in this Court it

was releasing Mrs. Agustin from any liability on the account and would not seek any deficiency.

111.   A confidential settlement agreement including the release of the debt was entered into by the parties.

112.   Just a few months later, Defendant PNC Bank again started collection of the account.

113.   The demands for payment after entry of a mutual release were false, deceptive, and misleading.

## FOURTH VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## <u>UNFAIR PRACTICES</u>

114.   Defendants' violations of the FDCPA also include, but are not limited to, the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

115.   On January 11, 2011 Defendant PNC Bank asserted in this Court it was releasing Mrs. Agustin from any liability on the account and would not seek any deficiency.

116.   Defendants entered into a settlement agreement which released Mrs.

Agustin from any further liability.

117.   On numerous occasions after the entry of the settlement Defendants demanded amounts that were no longer owed or permitted by law.

## FIFTH VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT:
## PROHIBITED COMMUNICATIONS

118.   Defendants' violations of the FDCPA also include the communication with a consumer at an unusual time, unusual place, or unusual time or place known to be inconvenient to the consumer, in violation of 15 U.S.C. § 1692c(a)(1).

119.   Defendants called Mrs. Agustin on her cellular phone before 8:00 a.m. local time at Mrs. Agustin's location.

120.   Mrs. Agustin has never consented to Defendants contacting her prior to 8:00 a.m.

## COUNT TWO:
## VIOLATIONS OF THE HAWAI'I REVISED STATUTES

## FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES:
## THREATS OR COERCION

121.   The acts of Defendants constitute violations of the Hawai'i Revised Statutes.   Violations include, but are not limited to: No collection agency shall collect or attempt to collect any money or other forms of indebtedness alleged to be due and owing by means of any threat, coercion, or attempt to coerce.   Such

conduct is a violation of Haw. Rev. Stat. § 443B-15.

122.   As the exhibits show, Defendants repeatedly threatened Mrs. Agustin with foreclosure and deficiency balance if she did not pay them on an account she no longer owed.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

123.   Violations of the Hawai'i Revised Statutes also include, but are not limited to, any fraudulent, deceptive, or misleading representation or means in an attempt to collect a debt.  Such conduct is a violation of Haw. Rev. Stat. § 443B-18.

124.   The underlying debt was released in 2011.

125.   Mrs. Agustin asserts, and the Court records show, that she no longer owed the debt when Defendants were communicating with her in an attempt to collect the debt.

126.   On January 11, 2011, in response to Mrs. Agustin 's lawsuit, Defendant PNC Bank asserted it would cease collection of the account.   Then, Defendants repeatedly attempted to collect the debt again and again over the next six years.  These were fraudulent, deceptive, or misleading representations of the debt.

127.   By attempting to collect a released debt through false and deceptive

communications, Defendants have deceived and/or misled Mrs. Agustin as to what amount of money she owes on this account.

## *COUNT THREE: VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT*

128.   The TCPA prohibits the use of an "automatic telephone dialing system" when calling to a cellular telephone service without permission. 47 U.S.C. § 227(b)(1)(A).

129.   Within the four years immediately preceding the filing of this lawsuit, Defendant telephoned Mrs. Agustin's cellular telephone on numerous occasions using an automatic dialing system.

130.   None of these calls was for an emergency purpose, but instead were attempts to collect a consumer debt from Mrs. Agustin.

131.   Mrs. Agustin never gave express consent for any of the Defendants to call her cellular telephone number.

132.   Upon information and belief, Mrs. Agustin did not ever provide her cellular telephone number to the original creditor or any Defendant, and therefore she is concerned as to how the Defendants obtained this cellular telephone number.

133.   Defendants repeatedly called Mrs. Agustin on her cellular telephone.

134.   Mrs. Agustin had settled the underlying account and was released from all liability.

135.   Defendants continued to call Mrs. Agustin after knowing Mrs. Agustin did not owe the debt.

136.   Defendant's conduct of calling Mrs. Agustin repeatedly after Mrs. Agustin was released from liability on the account demonstrates that Defendants' calls were purposeful violations of the TCPA.

## *COUNT FOUR: BREACH OF CONTRACT*

137.   Defendants have materially breached the terms of the settlement agreement they entered into with Ms. Agustin by contractually releasing her from liability of a debt and then repeatedly demanding payment of the debt from her for a period of over six years.

138.   Plaintiff has suffered damages as a result of Defendants' breach of contract.

### *Respondeat Superior Liability*

139.   In addition to their individual liability under the FDCPA, the acts and omissions of PNC Mortgage and PNC Bank, N.A. as an agents for the Defendant PNC FSG were committed within the time and space limits of the agency relationship to its principal, Defendant PNC FSG.

140.   The acts and omissions by PNC Mortgage and PNC Bank, N.A. were incidental to, or of the same general nature as, the responsibilities they were

authorized to perform by Defendant PNC FSG in collecting consumer debts.

141.   By committing these acts and omissions against Plaintiff, PNC Mortgage and PNC Bank, N.A. were motivated to benefit their principal, Defendant PNC FSG.

142.   Defendant PNC FSG is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal laws by the debt collectors employed as agents by Defendant PNC FSG during its attempts to collect the debt from Plaintiff.

### *Summary*

143.   The above-detailed conduct by Defendants and its agents in connection with collection of the debt, was conduct in violation of numerous and multiple provisions of the FDCPA and Hawai'i Revised Statutes including, but not limited to the above-cited provisions.

144.   As a result of Defendants' actions, Mrs. Agustin is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

### **TRIAL BY JURY**

145.   Plaintiff is entitled to and hereby respectfully demands a trial by jury.

US Const. amend. 7.  Fed.R.Civ.P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against any or all Defendants and in favor of the Plaintiff as follows:

a) Declaratory judgment that any or all Defendants violated Mrs. Agustin's rights under the Fair Debt Collection Practices Act;

b) Declaratory judgment that any or all Defendants violated Mrs. Agustin's rights under the Hawai'i Revised Statutes;

c) Declaratory judgment that any or all Defendants violated Mrs. Agustin's rights under the Telephone Consumer Protection Act;

d) Declaratory judgment that that any or all Defendants breached a contract with Mrs. Agustin;

e) That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every defendant in an amount to be determined at a trial by a jury;

f) That Plaintiff be awarded statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

g) That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to 15 U.S.C. §1692k(a)(3);

h)   That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat. § 480-13 in an amount to be determined by a jury at trial;

i)   That Plaintiff be awarded statutory damages of not less than $1,000.00 pursuant to Haw. Rev. Stat. § 480-13(b)(1);

j)   That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to Haw. Rev. Stat. § 480-13(b)(2);

k)   That Plaintiff be awarded statutory damages of $500.00 per call for each negligent violation of the Telephone Consumer Protection Act, pursuant to 47 U.S.C. §227(b)(3)(B);

l)   That Plaintiff be awarded statutory damages of $1,500.00 per call for each call found to be an intentional violation of the Telephone Consumer Protection Act, pursuant to 47 U.S.C. §227(b)(3);

m)   That Plaintiff be awarded compensatory and punitive damages in amount to be determined at trial but not less than $500,000;

n)   That the Court declare all defenses raised by Defendants to be insufficient; and

o)   Such other and further relief, including injunctive relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Respectfully submitted, this the <u>17th</u> day of <u>October</u>, 2017.

<u>*/s/ Justin A. Brackett*   </u>
Justin A. Brackett, #9954
Attorney for Plaintiff