IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ANNETTE AUGUSTIN,                )    CIVIL NO. 17-00525 SOM/RT
                                 )
          Plaintiff,             )    ORDER (1) DISMISSING CLAIMS
                                 )    AGAINST PNC MORTGAGE;
     vs.                         )    (2) GRANTING SUMMARY JUDGMENT
                                 )    IN FAVOR OF THE PNC FINANCIAL
THE PNC FINANCIAL SERVICES       )    SERVICES GROUP, INC.;
GROUP, INC.; PNC BANK N.A.;      )    (3) GRANTING SUMMARY JUDGMENT
PNC MORTGAGE,                    )    IN FAVOR OF PNC BANK N.A.
                                 )    WITH RESPECT TO THE FAIR DEBT
          Defendants.            )    COLLECTION PRACTICES ACT
                                 )    CLAIM ASSERTED IN COUNT TWO
                                 )    AND THE TELEPHONE CONSUMER
                                 )    PROTECTION ACT CLAIM ASSERTED
                                 )    IN COUNT FOUR; AND
                                 )    (4) GRANTING SUMMARY JUDGMENT
                                 )    IN FAVOR OF ANNETTE AUGUSTIN
                                 )    WITH RESPECT TO LIABILITY FOR
                                 )    THE BREACH OF CONTRACT CLAIM
                                 )    ASSERTED IN COUNT ONE AND
                                 )    WITH RESPECT TO THE SECTION
                                 )    480-2 CLAIM ASSERTED IN COUNT
_____)    THREE

**ORDER (1) DISMISSING CLAIMS AGAINST PNC MORTGAGE; (2) GRANTING
SUMMARY JUDGMENT IN FAVOR OF THE PNC FINANCIAL SERVICES GROUP,
INC.; (3) GRANTING SUMMARY JUDGMENT IN FAVOR OF PNC BANK N.A.
WITH RESPECT TO THE FAIR DEBT COLLECTION PRACTICES ACT CLAIM
ASSERTED IN COUNT TWO AND THE TELEPHONE CONSUMER PROTECTION ACT
CLAIM ASSERTED IN COUNT FOUR; AND (4) GRANTING SUMMARY JUDGMENT
IN FAVOR OF ANNETTE AUGUSTIN WITH RESPECT TO LIABILITY FOR THE
BREACH OF CONTRACT CLAIM ASSERTED IN COUNT ONE AND WITH RESPECT
TO THE SECTION 480-2 CLAIM ASSERTED IN COUNT THREE**

I.        INTRODUCTION.

          This is Plaintiff Annette Agustin's second case before

this court involving the same residential mortgage loan.  In

March 2009, she stopped sending payments to Defendant PNC Bank

N.A., the loan servicer.  Agustin sued PNC Bank N.A. and others

over the loan.  In June 2011, the parties settled that case, with

Agustin agreeing to vacate and surrender the mortgaged property
and not to oppose the foreclosure of the mortgage.  In return,
the settlement agreement required PNC Bank to pay Agustin $5,000
and to refrain from seeking any deficiency judgment and to
release all claims and demands with respect to Agustin's loan.
Notwithstanding the settlement agreement, PNC Bank or PNC
Mortgage (a division of PNC Bank) continued to send Agustin
monthly statements and other correspondence demanding payment,
reflecting past due amounts ranging from over $90,000 to over
$135,000.  PNC Bank also called Agustin more than 100 times with
respect to the loan.

Agustin wrote to PNC Mortgage in October 2014,
referring to the settlement.  In November 2014, PNC Mortgage
conceded that its records reflected the settlement and that she
"no longer ha[d] personal liability for either the debt or for
the property."  PNC Mortgage said it was working diligently to
update its system to prevent further communication about the
loan, but noted that she might still receive information
regarding the loan.  The correspondence and calls demanding
payment continued.

Agustin now sues PNC Bank and PNC Mortgage for having
made numerous attempts to collect a debt she no longer owed.  She
also sues The PNC Financial Services Group, Inc., asserting that
it is vicariously liable for conduct by PNC Bank and PNC

Mortgage.  In the First Amended Complaint of September 21, 2017,

Agustin asserts claims of breach of the settlement agreement

(Count One), violation of the Fair Debt Collection Practices Act

("FDCPA") (Count Two), violation of section 480-2 of Hawaii

Revised Statutes ("UDAP") (Count Three), and violation of the

Telephone Consumer Protection Act (Count Four).

Defendants move for summary judgment with respect to

all counts.  See ECF No. 71.  Agustin separately moves for

summary judgment with respect to the breach of contract and UDAP

claims asserted in Counts One and Three.  See ECF No. 74.  The

court dismisses the claims against PNC Mortgage, which Agustin

recognizes is not a legal entity separate from PNC Bank.  The

court grants summary judgment in favor of The PNC Financial

Services Group, Inc., with respect to all claims asserted in the

First Amended Complaint, as Augustin concedes that she cannot

establish any liability on its part.  Without objection by

Augustin, the court grants summary judgment in favor of PNC Bank

with respect to the FDCPA and Telephone Consumer Protection Act

claims asserted in Counts Two and Four of the First Amended

Complaint.  However, the court grants summary judgment in favor

of Agustin and against PNC Bank with respect to the breach of

contract and UDAP claims asserted in Counts One and Three of the

First Amended Complaint.  The court leaves for further

adjudication the issue of damages resulting from the breach of

contract.  The court awards statutory damages of $1,000 to Agustin for the UDAP claim, as well as her reasonable attorney's fees and costs.

## II.        BACKGROUND.

This case arises out of a $278,400 loan that Plaintiff Annette Agustin and her then-husband, George Agustin, obtained in February 2007 from National City Mortgage.  The Agustins executed an Adjustable Rate Note and a Mortgage to secure the loan.  *See* ECF Nos. 73-3 and 73-4.  On May 18, 2012, PNC Bank, successor by merger to National City Bank, assigned the loan to HSBC Bank USA, National Association as Trustee for Luminent Mortgage Trust 2007-2.  *See* ECF No. 73-5.  PNC Bank and PNC Mortgage, a division of PNC Bank, continued to service the loan.  *See* Corporate Disclosure Statement, ECF No. 19 ("PNC Mortgage is not a legal entity.  It is a division of PNC Bank N.A.").

The Agustins stopped paying on their loan in March 2009.  In September 2009, the Agustins sued The PNC Financial Services Group, Inc., and others, seeking rescission of their loan, recoupment, injunctive relief, and damages under the Truth in Lending Act, Real Estate Settlement Procedures Act, and Hawaii law.  *See* Complaint, *Agustin v. PNC Fin. Serv. Group, Inc.*, Civ. No. 09-00423 SOM/KSC, ECF No. 1.  On February 23, 2010, PNC Bank, N.A., filed a Corporate Disclosure Statement, indicating that it,

not The PNC Financial Services Group, Inc., was the proper

defendant. *See* Civ. No. 09-00423 SOM/KSC, ECF No. 12.

In June 2011, PNC Bank and Agustin settled the earlier

case. *See* Settlement Agreement, Waiver, and Mutual Release, ECF

No. 100. In relevant part, Agustin agreed to vacate and

surrender the mortgaged property to PNC Bank no later than May

18, 2018. *Id.*, PageID # 2753. The settlement agreement allowed

PNC Bank to foreclose on the mortgage and barred Agustin from

opposing foreclosure proceedings. *Id.*, PageID # 2737. In

return, PNC Bank agreed to pay Agustin $5,000 and agreed not to

seek any deficiency judgment. *Id.*, PageID #s 2737 and 2754. PNC

Bank also agreed that it would

> absolutely and unconditionally release the
> AGUSTINS . . . from any and all claims,
> demands, actions or causes of action, of
> whatever nature or description, known or
> unknown, now existing or hereafter acquired,
> and whether or not asserted in the
> Litigation, which the PNC Releasors ever had,
> now have, or may hereafter acquire against
> the AGUSTIN Releasees, arising out of or
> related in any manner to conduct of the
> AGUSTIN Releasees regarding the First Note
> and First Mortgage arising after the date of
> this Agreement, except for the obligations of
> the AGUSTINS under the terms and conditions
> of this Agreement.

*Id.*, PageID # 2738.

For purposes of these motions, there is no dispute that

Agustin complied with her obligations under the settlement

agreement. Despite her compliance, PNC Mortgage, as loan

servicer, continued to send Agustin monthly statements that demanded payment.  For example, a statement dated August 18, 2014, indicated that Agustin owed $91,152.90, which included interest, an escrow payment for taxes and insurance, new fees and charges, an overdue payment amount, late fees, and other fees. *See*, *e.g.*, ECF No. 73-6.  On August 21, 2014, PNC Mortgage sent Agustin a letter saying, "We understand that borrowers sometimes face challenges when it comes to making their payments."  ECF No. 73-7, PageID # 1601.  The letter included the heading "Delinquency Notice Information," underneath which the letter stated, "Our records show that mortgage payments of $87,588.89, plus late charges and other fees and costs of $10,159.10 for a total of $97,747.99 January 16, 2019are due . . . .  Please note that if you do not make these payments by the late charges assessment date, an additional late fee may be added to your account."  *Id.*

On or about October 5, 2014, Agustin sent a letter to PNC Mortgage disputing the debt.  She told PNC Mortgage that she did not owe anything because "this matter has already been settle[d] in court.  Please see the attached documentation that provides a more detailed breakdown of the court settlement."  ECF No. 74-3, PageID # 1704.

On or about November 10, 2014, PNC Mortgage responded to the October 5, 2014, letter, stating:

6

> Our records indicate that you entered into a
> Settlement Agreement with PNC.  We have
> updated the account to reflect that you no
> longer have personal liability for either the
> debt or for the property.
>
> On November 6, 2014, we updated the credit
> reporting showing a full settlement as of May
> 2011.
>
> PNC is working diligently to update our
> system to prevent any further communication .
> . . to you.  However, you may continue to
> receive information about the foreclosure.
>
> We trust that this response will resolve your
> concerns.

ECF No. 74-4, PageID # 1709.  PNC Mortgage's system was updated

on November 6, 2014, to say, "THIS IS A LITIGATED LOAN, AND PER

THE TERMS OF THE SETTLEMENT, THE LOAN IS BEING REPORTED AS

SATISFIED IN FULL EFFECTIVE 5/11/11."  ECF No. 74-5, PageID

# 1711.  At no time, however, did PNC Mortgage update its

standard delinquency letters, monthly statements, or other

correspondence, to reflect that Agustin did not actually have to

pay any of the amounts PNC Mortgage was demanding.

        While PNC Bank now says it was required by federal law

to send Agustin "information" about her loan obligations, the

"information" it sent never acknowledged that PNC Bank was not

actually seeking the money from Agustin that the letters kept

saying she owed.  For example, on November 17, 2014, a week after

acknowledging that Agustin had no further liability with respect

to the loan, PNC Mortgage sent Agustin a letter that enclosed a

one-year hazard insurance policy at a cost of $2,359.00 that it charged to Agustin's loan account. *See* ECF No. 73-8.

PNC Mortgage also continued to send Agustin letters noting, "We understand borrowers sometimes face challenges when it comes to making their payments. . . . please call us to discuss your current loan status. We want to help you explore options to bring your account current and find the best possible solution to resolve any financial hardship. . . . This is an attempt to collect a debt and/or enforce our lien." ECF No. 98-3, PageID #s 2610-2639 (letters dated from Nov. 11, 2014, through June 13, 2017). Letters continued to threaten additional late fees. ECF No. 98-4, PageID #s 2630-2710 (letters dated from July 10, 2015, through Oct. 10, 2017).

Each statement listed a "Payment Amount Due," "Total Amount Due," and "Payment Due Date." The statements also reflected a past due amount ranging from over $90,000 to over $135,000. *See* ECF No. 98-2. In other words, PNC Mortgage continued to demand payment, even after PNC Mortgage's November 2014 acknowledgment that the loan had been deemed "satisfied" as of May 2011. Beginning in December 2016, the same monthly statements were sent to Agustin on PNC Bank letterhead. *See* ECF No. 98-2, PageID #s 2537-86.

Agustin's verified First Amended Complaint also states that, "Despite Defendants' knowledge and assertions that they

would stop calling, Defendants continued to call Ms. Agustin over 100 more times." ECF No. 62, PageID # 1263.

On October 27, 2014, approximately 3½ years after the June 2011 settlement agreement, HSBC filed a state-court foreclosure proceeding. *See* Docket,

http://hoohiki.courts.hawaii.gov/#/search (input Case ID 3cc141000401, then click on "Document List"). In the July 20, 2017, Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure, Judge Henry Nakamoto determined that the Agustins owed payments on their loan from March 1, 2009. While the order reflected that the Agustins owed $401,420.42 for principal and interest, taxes, insurance, property inspections, fees, and late charges, it noted that "**Pursuant to an agreement between PLAINTIFF, G. Agustin, AND A. Agustin, PLAINTIFF has agreed to voluntarily waive any right it may have to a monetary/deficiency judgment in this action**." ECF No. 73-10, PageID # 1609-10. According to the docket, the property was sold in October 2017, nearly three years after the unopposed foreclosure proceedings began. Agustin received the "informational" correspondence that continued to demand payment through the end of the foreclosure proceedings. As noted above, none of the "informational" correspondence ever told Agustin that

she had no further liability.  Instead, the standard letters
continued to demand payment.

## III.     SUMMARY JUDGMENT STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment shall be granted when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134
(9th Cir. 2000).  The movants must support their position
concerning whether a material fact is genuinely disputed by
either "citing to particular parts of materials in the record,
including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for the purposes of the motion only), admissions,
interrogatory answers, or other materials"; or "showing that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).
One of the principal purposes of summary judgment is to identify
and dispose of factually unsupported claims and defenses.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial.  *See id.* at 323.  A moving party without the

ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of

material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9ᵗʰ Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## IV.        ANALYSIS.

Certain issues that were argued in Agustin's briefs are no longer in dispute. At the hearing on the present motions, Agustin agreed that PNC Mortgage is a division of PNC Bank and therefore should be dismissed from this case. *See* ECF No. 19, PageID # 231. The court therefore dismisses the claims asserted against PNC Mortgage.

At the hearing, Agustin also failed to articulate any basis for her claim that The PNC Financial Services Group should

be held vicariously liable for the acts of PNC Bank. She agreed that summary judgment should be granted in favor of The PNC Financial Services Group with respect to all claims.

On December 17, 2018, Agustin agreed that she lacked facts to establish the Telephone Consumer Protection Act claim asserted in Count Four. *See* ECF No. 98, PageID # 2396. Summary judgment is therefore granted in favor of PNC Bank with respect to Count Four.

Finally, at the hearing, Agustin conceded that PNC Bank was not a debt collector such that it could be held liable for violations of the Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692a(6)(F) ("Debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person."). *See also Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 682 (D. Haw. 2017) ("courts have consistently held that the FDCPA does not apply to mortgage servicing companies, or assignees of the mortgage debt, if the debt was not in default at the time the debt was obtained."); *Soriano v. Wells Fargo Bank, N.A.*, 2012 WL 1536065, at *8 (D. Haw. Apr. 30, 2012) (same). Accordingly, summary judgment is

granted in favor of PNC Bank with respect to the FDCPA claims
asserted in Count Two.

Given Agustin's concessions, only the breach of
contract and section 480-2 claims asserted in Counts One and
Three against PNC Bank remain for adjudication.

### A. Summary Judgment is Granted in Favor of Agustin With Respect to Liability for the Breach of Contract Claim Asserted in Count One of the First Amended Complaint.

Agustin seeks summary judgment with respect to her
breach of contract claim, arguing that PNC Bank breached the
settlement agreement by continuing to demand payment after
agreeing to "absolutely and unconditionally release" her "from
any and all claims, demands, actions or causes of action, of
whatever nature or description, known or unknown, now existing or
hereafter acquired . . . arising out of or related to" the
mortgage, except with respect to obligations in the settlement
agreement. *Id.*, PageID # 2738.

To demonstrate liability with respect to a breach of
contract claim, Agustin must prove: "(1) the contract at issue;
(2) the parties to the contract; (3) whether Plaintiff performed
under the contract; (4) the particular provision of the contract
allegedly violated by Defendants; and (5) when and how Defendants
allegedly breached the contract." *Evergreen Eng'g, Inc. v. Green
Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012)

(quotation marks and citation omitted). Agustin satisfies each of these elements.

First, the contract at issue is the settlement agreement. Second, the parties to the settlement agreement included PNC Bank and Agustin. Third, there is no dispute that Agustin performed her obligations under the terms of the settlement agreement. Fourth, Agustin shows that PNC Bank unconditionally released her "from any and all claims, demands, actions or causes of action, of whatever nature or description, known or unknown, now existing or hereafter acquired . . . arising out of or related to" the mortgage. Fifth, Agustin demonstrates that, even after the parties settled their dispute, PNC Bank continued to demand payment with respect to the mortgage.

PNC Bank argues that, even if its actions are inconsistent with the release language, its actions do not constitute a breach of contract. PNC Bank argues that the mutual release does not prohibit it from asserting that Agustin still owes PNC Bank money. PNC Bank says the release only provides a defense to any lawsuit that PNC Bank might file seeking to collect the settled debt from Agustin.

The Ninth Circuit deems "[f]ormalistic distinctions to avoid the clear import of a contract" as inconsistent with the covenant of good faith and fair dealing implied in all contracts.

*See Gruver v. Midas Int'l Corp.*, 925 F.2d 280, 283 (9ᵗʰ Cir. 1991). Under that approach, the release in this case must be viewed as a contractual obligation prohibiting demands for payment, even in the absence of a new lawsuit by a creditor seeking to collect on the settled debt. Admittedly, *Gruver* addressed the right to sue in the face of a release, saying, "[A]t least in the absence of an express contractual provision that one retains the right to sue on extinguished claims, it cannot seriously be maintained that when one releases his claims against another, thereby extinguishing any causes of action he might have had, he nevertheless retains the right to sue on those extinguished claims." *Id.* (citation omitted). Treating the release as a kind of contract, the Ninth Circuit applied the "American Rule" with respect to attorneys' fees to release agreements, concluding under Oregon law that attorneys' fees were not available for an alleged breach of a release agreement unless such fees were provided for in the release. *Id.* However, while *Gruver* focused on the right to sue, there is no basis for rejecting its reasoning in the context of demands for payment made outside of a formal lawsuit.

PNC Bank's argument that the release language cannot support Augustin's breach of contract claim ignores *Gruver*'s reasoning. In *Gruver*, it was the breach of release that was the wrongful action giving rise to the very concept of an attorneys'

16

fee award as damages.  It is not at all clear why, as PNC Bank

argues, such damages can only be incurred in defending against a

suit filed by PNC Bank.  That may be the context of a particular

breach.  *See, e.g., Widener v. Arco Oil & Gas Co.*, 717 F. Supp.

1211, 1217 (N.D. Tex. 1989) (noting that a "breach of a release

may be grounds for an action for damages" because "the purpose of

entering into a release is to avoid litigation").  But PNC Bank

cites no authority stating that a new lawsuit by the settling

creditor is the exclusive context in which a release can be

breached.  That is, PNC Bank does not show that a particular

factual context is somehow a legal prerequisite.

      The release language says that PNC Bank "absolutely and

unconditionally" releases Agustin from "any and all claims,

demands, actions or causes of action" that PNC Bank had or may in

the future have.  The repeated loan statements listing ever-

increasing amounts qualify as "demands" that PNC Bank made in

contravention of its express release.  In arguing that the

release cannot serve as a breached contract provision, PNC Bank

is reading out of the release the express prohibition on further

"demands" by PNC Bank.

      At this point, Agustin may seek damages, including

"costs and reasonable attorney's fees" arising out of PNC's

breach of its agreement to refrain from demanding payment with

respect to the underlying loan.  *See Choy v. Cont'l Cas. Co.*,

17

2015 WL 7588233, at *4 (D. Haw. Nov. 25, 2015) (stating that a breach of contract claim also requires a showing of damages); *accord Gruver*, 925 F.2d at 283. The settlement agreement includes an express agreement with respect to attorneys' fees that overcomes the "American Rule" under which each side bears its own attorneys' fees and that therefore establishes damages for a breach of the release agreement:

> In the event that any Party hereto fails to perform any of the obligations under this Agreement or in the event a dispute arises concerning the meaning or interpretation of any provision of this Agreement, the Party not prevailing in such dispute shall pay any and all costs and expenses incurred by the other party in enforcing or establishing their rights hereunder, including without limitation court costs and reasonable attorney's fees.

ECF No. 100, PageID #s 2744-45. Evidence of the amount of damages flowing from the breach of contract is not before this court, and this court leaves adjudication of the damage amount for future proceedings.

This court is not persuaded by PNC Bank's argument that it cannot be liable to Agustin because, it says, it was required by law to send her the very monthly statements and other letters that form the basis of her breach of contract claim. PNC Bank notes that it did not seek or obtain a deficiency judgment against Agustin. This court disagrees that the correspondence was simply required "information." *See* ECF No. 71-1, PageID #s

1543-44.  For years after the settlement agreement, PNC Bank or

PNC Mortgage sent Agustin deficiency letters, monthly statements,

and other correspondence demanding payment or seeking to collect

the debt.  While language such as "this is an attempt to collect

a debt" may have been included to satisfy potential obligations

under the Fair Debt Collections Practices Act and other statutes

and regulations, that language did not indicate the true

relationship PNC Bank had with Agustin under the settlement

agreement.  Unless accompanied by an explanation, which it was

not, this "information" conveyed a request by PNC Bank for

payment from Agustin when no payment was actually due.  The

inclusion of language noting that "this is an attempt to collect

a debt" certainly made it appear that PNC Bank was indeed trying

to collect money from Agustin.

PNC argues that Regulation Z, 12 C.F.R. Part 1026, the

implementing regulations for the Truth in Lending Act, required

it to send Agustin the "information" in question.  Under 12

C.F.R. § 1026.41, creditors must send consumers periodic

statements for residential mortgage loans that disclose things

such as the amount due, the payment due date, past payment

information, the amount of outstanding the principal balance, and

delinquency information including the length of delinquency and

the total payment needed to bring the account current.  But PNC

Bank cites no provision of Regulation Z that allows such

disclosures to inaccurately reflect the obligations of the
consumer when, for example, the lender and the consumer have
settled all claims with respect to the mortgage loan.  One of the
purposes of the Truth in Lending Act is "'to protect the consumer
against inaccurate and unfair credit billing,'".  *Jesinoski v.
Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792, (2015)
(quoting 15 U.S.C. § 1601(a)).  At the time PNC Bank sent the
"information," Agustin no longer owed anything to PNC Bank.  PNC
Bank fails to show that Regulation Z allowed, much less required,
monthly statements that inaccurately reflected what Agustin owed.

PNC also argues that Regulation X, 12 C.F.R. Part 1024,
the implementing regulations for the Real Estate Settlement
Procedures Act, required it to send the "information" to Agustin.
While PNC Bank does not identify any specific provision of
Regulation X requiring it to send the "information," Regulation X
did require PNC Bank to have policies in place that were
reasonably designed to ensure the provision of accurate and
timely disclosures and to investigate, respond to, and make
corrections with respect to complaints by borrowers.  *See* 12
C.F.R. § 1024.38(b).  It is not at all clear that PNC Bank's
provision of "information" that inaccurately reflected Agustin's
obligations complied with, much less was required by,
Regulation X.

For example, each of the monthly statements listed an "Amount Due," "Payment Due Date," and "Past Due Amount." Each monthly statement had an "Explanation of Amount Due," which listed interest, taxes, insurance, new fees and charges, overdue payments, past late charge fees, and other past fees. No statement indicated that Agustin need not pay the "amount due," even after PNC Mortgage told Agustin in November 2014 that it had "updated the account" to reflect that Agustin had no "personal liability for either the debt or for the property." ECF No. 62-5, PageID # 1308. Under these circumstances, PNC Bank breached the release provision in the settlement agreement by continuing to demand payment with respect to loan obligations it had agreed to release Agustin from.

While Agustin has established liability with respect to her breach of contract claim, damages for the breach remain for future adjudication.

**B.   Partial Summary Judgment is Granted in Favor of Agustin With Respect to Liability for the UDAP Claim Asserted in Count Three of the First Amended Complaint.**

Count III of the First Amended Complaint alleges that PNC Bank violated chapter 480 of Hawaii Revised Statutes, also known as Hawaii's Unfair and Deceptive Acts and Practices ("UDAP") law. Section 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Two distinct

21

causes of action exist under section 480-2: claims alleging unfair methods of competition and claims alleging unfair or deceptive acts or practices. *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Haw. 77, 110, 148 P.3d 1179, 1212 (2006). Agustin does not proceed under the "unfair methods of competition" prong. Instead, she seeks summary judgment on the ground that PNC Bank's unrelenting demands for payment in spite of the settlement agreement constituted an "unfair or deceptive" act or practice.[1]

In *Hawaii Community Federal Credit Union v. Keka*, 94 Haw. 213, 227, 11 P.3d 1, 15 (2000), the Hawaii Supreme Court noted that a mortgage loan secured by a residence is "conduct of any trade and commerce" involving "consumers" for purposes of a section 480-2 claim. This court therefore turns to whether PNC Bank's conduct was either unfair or deceptive.

"Unfair" acts and practices are distinct from "deceptive" acts and practices in terms of how they are defined and the standard by which they are proved. *See State by Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 51, 919 P.2d 294, 313 (1996); *see also Bald v. Wells Fargo Bank, N.A.*, 688 F. App'x 472, 475 (9th Cir. 2017) ("To violate HRS § 480-2, a practice need only be

---

[1]To the extent Agustin premises her UDAP claim alleged in Count III on a violation of Hawaii's collection agency statute, she does not now contest that PNC Bank is not a "collection agency."

unfair or deceptive, not both."); *Courbat v. Dahana Ranch, Inc.*,
111 Haw. 254, 261, 141 P.3d 427, 434 (2006) ("'Deceptive' acts or
practices violate HRS § 480-2").

Hawaii's courts have held that an act or practice is
unfair (1) when it offends established public policy, (2) when
the practice is immoral, unethical, oppressive, unscrupulous, or
(3) when it is substantially injurious to consumers. *See Hungate
v. Law Office of David B. Rosen*, 139 Haw. 394, 411, 391 P.3d 1,
18 (2017); *Balthazar v. Verizon Haw., Inc.*, 109 Hawaii 69, 77,
123 P.3d 194 (2005). Agustin need not establish all three
circumstances to demonstrate that PNC Bank's conduct was
"unfair." *Id.; Bald*, 688 F. App'x 472, 475 (9th Cir. 2017)
(stating that a "practice may be unfair because of the degree to
which it meets one of the criteria or because to a lesser extent
it meets all three" (quotation marks and citation omitted)). "A
practice may be unfair if it "offends public policy as it has
been established by statutes, the common law, or otherwise."
*Hungate*, 139 Haw. at 411, 391 P.3d at 18 (alterations, quotation
marks, and citation omitted).

Whether an act or practice is "unfair" usually involves
a question of fact for the factfinder to decide. *See id.* at 410,
391 P.3d at 17. However, in this case, there is no dispute about
what occurred. Any reasonable jury would find PNC Bank's acts
"unfair." The court therefore rules as a matter of law that PNC

Bank's conduct in this case was "unfair" for purposes of section 480-2 of Hawaii Revised Statutes. PNC Bank relentlessly sent Agustin correspondence demanding payment of money she did not owe, even after acknowledging in November 2014 that, pursuant to the settlement agreement, Agustin had no further liability with respect to the loan. Additionally, PNC bank called Agustin over a hundred times with respect to the loan. For years, PNC Bank demanded payments of additional charges such as late fees and insurance, each time inaccurately demanding payment of money that PNC Bank knew Agustin did not owe. As a matter of law, this is "oppressive" conduct, and oppressive conduct is unfair for purpose of Hawaii's UDAP statute.

The years of inaccurate demands for payment were also unfair in that they were "unscrupulous or substantially injurious" to a consumer like Agustin. For example, if a company for years sent a consumer monthly bills charging $0.15 that the consumer did not owe, the consumer might well pay the bill to stop the harassing monthly bills. While Agustin may not have been able to as easily pay the huge amount PNC Bank was demanding, PNC Bank's monthly demands for money not owed were just as unscrupulous or injurious as demands by a company wrongly billing a consumer $0.15 every month. In both cases, a consumer is relentlessly bombarded with payment demands for amounts the consumer does not owe.

While "deceptive" is not defined in Hawaii's UDAP statute, it involves "the capacity or tendency to mislead or deceive." *Courbat*, 111 Haw. at 261, 141 P.3d at 434. Courts apply a three-part test to determine whether an act or practice is "deceptive," examining whether there is "'(1) a representation, omission, or practice[ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [when] (3) [ ] the representation, omission, or practice is material.'" *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046, 1053 (9th Cir. 2014) (quoting *Courbat v Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 435 (alterations in original)). A representation, omission, or practice is "material" when it involves "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Courbat*, 111 Haw. at 262, 141 P.3d at 435.

The test to determine deceptiveness is objective, and turns on "whether the act or omission is likely to mislead consumers, as to information important to consumers in making a decision regarding the product or service." *Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 411, 391 P.3d 1, 18 (2017) (alterations, quotation marks, and citation omitted). Proof of actual deception is not required. *Id.* Whether an act is "deceptive" usually involves questions of fact for the factfinder to decide. *Id.* at 410, 391 P.3d at 17. Having

determined that PNC Bank's conduct was unfair, this court need not determine whether it was also deceptive for purposes of Hawaii's UDAP statute.

In addressing the UDAP claim, PNC Bank, as it did with the contract claim, argues that it was required by federal statutes and/or regulations to send monthly statements and other correspondence to Agustin with respect to her mortgage obligations. However, as discussed above, PNC Bank does not actually show that federal statutes or regulations allowed, much less required, monthly statements demanding payments that it knew Agustin did not actually need to make. Nor does PNC Bank cite any law prohibiting a clarifying statement even if "information" had to be provided. In fact, the regulations PNC Bank relies on require accurate disclosures. The "information" PNC Bank sent Agustin was undeniably inaccurate.

For example, PNC Bank says it was required to provide various details to Agustin pursuant to 12 C.F.R. § 1026.41(d)(8), which requires the provision of certain information related to delinquent loans. Even if PNC Bank was including purportedly required information, that information was incomplete and therefore misleading. The Truth in Lending Act requires truthful disclosures, not inaccurate "information." *See Jesinoski*, 135 S. Ct. at 792, (2015) ("Congress passed the Truth in Lending Act . . .'to protect the consumer against inaccurate and unfair credit

billing.'" (quoting 15 U.S.C. § 1601(a)).  PNC Bank sent Agustin

statements that inaccurately demanded payments she was not

required to make.  To add insult to injury, PNC Bank kept adding

fees and other charges, even though the settlement agreement

released Agustin from further liability under the loan.  The

monthly statements and other correspondence did not indicate

that, while amounts kept accruing until the foreclosure was

completed, Agustin had no liability with respect to those

amounts.  There was no notation on the letters sent to Agustin

such as "Amount listed for informational purposes only.  No

payment due pursuant to settlement agreement."  The monthly

statements did not even state, "Do not pay."  Instead, the

standard monthly statements and other correspondence made it

appear as though Agustin still owed significant amounts with

respect to her loan and told Agustin that payment was due on

certain dates.  Even after recognizing in November 2014 that

Agustin "no longer ha[d] personal liability for either the debt

or for the property, *see* ECF No. 62-5, PageID # 1308, PNC Bank

continued to demand payments from her for years after that.

        Complicating matters, PNC Bank took 3½ years after the

settlement agreement was signed to commence an action seeking

foreclosure, and over three more years to complete the unopposed

foreclosure action.  While PNC Bank stated at the hearing that

Hawaii's nonjudicial foreclosure process had been stayed during

that time, it cited no law prohibiting it from promptly bringing a judicial foreclosure action. During the extended period, even though Agustin had turned the property over to PNC Bank, PNC Bank kept adding fees and other charges for taxes and insurance and telling Agustin she owed these growing balances.

Under section 480-13(b)(1) of Hawaii Revised Statutes, any consumer who is injured by an unfair or deceptive act forbidden or declared unlawful by section 480-2 may be awarded "not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit." "To obtain relief under section 480-13(b)(1), a consumer must establish three elements: "'(1) a violation of [section] 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages.'" *Compton*, 761 F.3d at 1053 (quoting *Davis v. Wholesale Motors, Inc.*, 86 Hawaii 405, 417, 949 P.2d 1026 (Ct. App. 1997)).

The Ninth Circuit notes that, although "injury" and "damages" are not defined in Hawaii's UDAP statutes,

> Hawaii courts have not set a high bar for
> proving these elements. The plaintiff must
> show only that the alleged violations of
> section 480-2(a) caused private damage, and
> that the plaintiff's injury is fairly
> traceable to the defendant's actions[.]"
> Because deceptive acts do their damage when
> they induce action that a consumer would not
> otherwise have undertaken, a consumer who can
> show a resulting injury is entitled to

>    damages even if the consumer has not actually
>    consummated a particular transaction. For
>    instance, a consumer could recover damages
>    for out-of-pocket expenses for a money order,
>    gasoline, parking, and wear and tear on an
>    automobile that resulted from an unfair
>    business practice.

*Compton*, 761 F.3d at 1053 (alterations, quotation marks, and citations omitted).

At a minimum, the record reflects that Agustin was injured and suffered damages in the form of postage that she spent trying to clarify that she did not owe any money to PNC Bank. In July 5, 2017, for example, Agustin sent a certified letter to PNC Bank that disputed the bank's claim that she owed more than $128,000. The postage for the certified letter was $6.59. *See* ECF No. 74-2, PageID # 1708. Agustin clarified at the hearing that she is seeking statutory damages of $1,000, rather than three times her actual damages. *See* ECF No. 74, PageID # 1697. Because Agustin has established liability for a UDAP violation and some monetary damages, the court, pursuant to section 480-13(b)(1) of Hawaii Revised Statutes, awards to Agustin $1,000 in statutory damages, as well as her reasonable attorney's fees and costs.

**V.      CONCLUSION.**

The claims against PNC Mortgage are dismissed, as it is not a legal entity and is instead a division of PNC Bank.

Summary judgment is granted in favor of The PNC Financial Services Group, Inc., with respect to all claims asserted in the First Amended Complaint.

Summary judgment is granted in favor of PNC Bank with respect to the FDCPA and Telephone Consumer Protection Act claims asserted in Counts Two and Four of the First Amended Complaint.

Summary judgment is granted in favor of Agustin and against PNC Bank with respect to liability for the breach of contract claim asserted in Count One of the First Amended Complaint, but the court leaves the determination of damages for that breach for future adjudication.

Summary judgment is granted in favor of Agustin and against PNC Bank with respect to the UDAP claim asserted in Count Three of the First Amended Complaint. The court awards statutory damages of $1,000 to Agustin and against PNC Bank, leaving any award of fees and costs for future adjudication.

Finally, the parties are ordered to immediately contact Magistrate Judge Rom Trader to conduct a further settlement conference in light of this order.

IT IS SO ORDERED.

DATED: Honolulu, January 16, 2019.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*Agustin v. The PNC Fin. Servs. Group, Inc.*, Civ. No. 17-00525 SOM/RT; ORDER
(1) DISMISSING CLAIMS AGAINST PNC MORTGAGE; (2) GRANTING SUMMARY JUDGMENT IN FAVOR OF
THE PNC FINANCIAL SERVICES GROUP, INC.; (3) GRANTING SUMMARY JUDGMENT IN FAVOR OF PNC
BANK N.A. WITH RESPECT TO THE FAIR DEBT COLLECTION PRACTICES ACT CLAIM ASSERTED IN
COUNT TWO AND THE TELEPHONE CONSUMER PROTECTION ACT CLAIM ASSERTED IN COUNT FOUR; AND
(4) GRANTING SUMMARY JUDGMENT IN FAVOR OF ANNETTE AUGUSTIN WITH RESPECT TO LIABILITY
FOR THE BREACH OF CONTRACT CLAIM ASSERTED IN COUNT ONE AND WITH RESPECT TO THE SECTION
480-2 CLAIM ASSERTED IN COUNT THREE